The Illinois Central Railroad Company

*v.*

The Village of Lostant.

*Filed at Ottawa May 11, 1897.*

167   85
175   568

167   85
197   ³347

167   85
e204  ⁵371

1. Eminent domain—*description of property in ordinance is aided by an accompanying plat made part thereof.* Property is sufficiently described in an ordinance for condemnation, where an accompanying plat, which is referred to in the ordinance and made a part thereof, renders the description certain.

2. Same—*what not proper element of damage on opening street across railroad.* Prospective loss of profits which may result to a railroad from the destruction of approaches to grain elevators built upon land leased from the railroad company, occasioned by the extension of a street across the company's right of way, cannot be allowed as compensation for the land taken.

3. Same—*just compensation does not include imaginary or speculative damages.* Just compensation for property condemned does not in-

clude imaginary or speculative damages, which may or may not occur in the future.

4. Same—*market value is not the measure of damages on opening street across railroad.* The market value of land taken from a railroad company by condemnation in extending a street across its right of way is not the measure of damages, as such property cannot be sold for general purposes.

5. Same—*when value of right of way for erection of structures other than tracks may be allowed.* The value of a right of way for the erection of warehouses, and structures other than tracks, cannot be allowed as damages on opening a street across such right of way, unless the railroad company in good faith designs to erect such structures on the land condemned, for use in connection with its road. (*Illinois Central Railroad Co.* v. *City of Chicago,* 156 Ill. 98, explained.)

Appeal from the County Court of LaSalle county; the Hon. H. W. Johnson, Judge, presiding.

Edgar Eldredge, for appellant:

It is essential that the premises intended to be taken by condemnation should be so described that there can be no question as to their identity.    6 Am. & Eng. Ency. of Law, 610.

The ordinance must state the width and boundaries of the property. If not, it will be invalid.  Mills on Eminent Domain, sec. 115.

The right of erecting structures other than railroad tracks, for railroad purposes, upon its right of way, is a valuable privilege, for which the company pays the State. *Railroad Co.* v. *Chicago,* 156 Ill. 98 and 112.

The public have a right to use the whole of a highway, and may remove anything projecting over the land taken, and hence damages should be allowed for such right of removal, and there should be no reduction of damages on the ground that the public do not insist on the right.    Mills on Eminent Domain, sec. 276.

The value of land consists in its fitness for use, present or future; and if property has a special value, from whatever cause, that special value belongs to the owner of the property, and he is entitled to be paid for it by

the party seeking condemnation. *Railroad Co.* v. *Kirby*, 104 Ill. 345; *Railroad Co.* v. *Jacobs*, 110 id. 414; *Haslam* v. *Railroad Co.* 64 id. 353; *Johnson* v. *Railroad Co.* 111 id. 413; *Dupuis* v. *Railroad Co.* 115 id. 97.

When land is held, by virtue of a franchise, for a public use, and it is sought to be condemned for another public use, the franchise and the rights thereunder must necessarily be alleged in the petition, because it is such franchise, and the rights thereunder, which are in fact condemned. *Railway Co.* v. *Railway Co.* 62 Mich. 577, and cases cited; Randolph on Eminent Domain, 299, 300.

DUNCAN, HASKINS & PANNECK, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This appeal is from judgments of the county court of LaSalle county fixing the compensation to be paid appellant for opening streets across its right of way in the village of Lostant. Two proceedings were begun in the county court at the same time,—one for opening Second street and the other for opening Third street. The ordinances, petitions and proceedings in the cases are identical. For Second street the compensation was fixed at $200 and for Third street at $300, and judgments of condemnation were entered accordingly. The cases are consolidated in this court.

It is first insisted that the petitions for condemnation are fatally defective, because, as is said, they do not set out "the franchise right of the defendant," and because they fail to allege that the defendant is a corporation. They do state that the ordinances under which they are filed provide for extending its streets eastward across the right of way of the Illinois Central Railroad Company, the prayer being that just compensation be made "for said private property." This is clearly sufficient to show the property sought to be condemned belonged to a railroad corporation and that it was a part of its right

of way. We are unable to see what more could have been reasonably required.

It is also insisted that neither the ordinances nor petitions described the property sought to be taken. It is alleged that the ordinances provide for the streets "from the east line of Main street to the west line of Railroad avenue, * * * as shown by the red lines drawn on the plat accompanying and made a part of said ordinance," and the prayer is that compensation be fixed for the property specified in the ordinance. The accompanying plat shows that the company's right of way is bounded on the west and east by Main street and Railroad avenue, and that the right of way is two hundred feet wide; that Second and Third streets, east and west of the right of way, are sixty-six feet wide, and connected by the red lines over the right of way at a corresponding width. It thus appears that each piece of property sought to be condemned is sixty-six feet wide and two hundred feet long. The objection is without merit.

It appears from a diagram offered in evidence and the testimony of witnesses, that grain elevators, owned by lessees of the railroad company, stand on the right of way west of the railroad tracks, from which approaches extend across the sixty-six feet sought to be condemned. The lessees, by the terms of their leases, agreed to ship "all grain and coal they could control" over the company's road. The defendant sought, on the trial below, to introduce evidence showing the amount of such freight shipped by these elevators over its road, and the freight charges received therefor, but the court excluded the evidence, and this is assigned for error. The position attempted to be maintained is, opening the supposed streets will destroy the approaches to the elevator, thereby injuring their business, and so deprive the company of profits which it would otherwise receive for shipping grain and coal, and the extraordinary claim is made that such prospective profits may properly be taken into account in de-

termining the just compensation to be paid for the land taken. It is not pretended that the railroad company has any property rights in the approaches. The ground on which they stand was not leased to the owners of the elevators, nor is it pretended that they, by the terms of their leases, were required to put these approaches where they are or maintain them there. The owners of the elevators make no complaint in this proceeding. The alleged loss to the defendant is manifestly incapable of an intelligent estimate. It is remote, uncertain and purely speculative. That the evidence was incompetent is too clear for argument.

The superintendent of the road testified that he was acquainted with the land to be taken, and could say whether or not it had any peculiar value to the company for the purposes of erecting railroad structures thereon other than tracks, and was then asked to state whether it was adapted to such purpose. An objection to the question was sustained. As shown by the bill of exceptions, counsel for the defendant then stated: "I offer to prove by this witness that this unoccupied strip of land is of value to the railroad company for the purpose of erecting warehouses, elevators, depots, freight houses, corn-cribs, coal-bins, and other structures other than railroad tracks, for the purpose of carrying on railroad business;" also, to prove that the opening of the street will preclude such use. The court was requested to instruct the jury that if they believed, from the evidence, that the use of the land sought to be taken for street purposes would exclude the company from erecting thereon such houses, structures or improvements, other than railroad tracks, "which the company might now or at any time hereafter desire to erect and use for the purposes of its railroad business, then you will also assess as damages such sum as you believe, from the evidence, is shown, if any, as shall equal the value of such land to said company for the erection and use of such structures." Coun-

sel for appellant insists the exclusion of this evidence and the refusal of said instruction are reversible error, and in support of the contention reliance is placed upon the case of *Illinois Central Railroad Co.* v. *City of Chicago,* 156 Ill. 98.

It seems to be thought that the effect of the case cited is to hold that the charter of the defendant company confers upon it peculiar rights as to the erection of buildings and other structures upon its right of way. This is a misapprehension. Railroad companies generally have the right to erect structures upon their right of way, other than tracks, to be used in connection with the use and operation of their roads. That case holds only that it was error to exclude proof of "the value to the railroad company" of the ground proposed to be taken, for the purpose of erecting thereon permanent structures for railroad purposes and uses other than tracks, and "the value of said strip for grain elevators," etc.; also, that the opening of the proposed street would prevent such use. The offer there was to prove a value of the land for the purpose named, the inference being that the company contemplated putting it to such use, and in that view of the effect of the offered evidence it was held the second proposition of law requested by the railroad company should have been approved. The offered testimony in this case was essentially different, in that it was not proposed to prove what the value of the ground would be for the purpose of putting railroad structures thereon, but simply to prove that *"it is of value to the railroad company."* Suppose all that was offered had been admitted; upon what basis could the jury have fixed an amount for the loss? And if it had been admitted just as it was offered, no foundation in the evidence would have been furnished for the second instruction. There would have been an absence of testimony tending to show the value of the land to the company to put structures thereon. There is nothing in the testimony offered from which it can be even

remotely inferred or conjectured that the company ever expects or intends to erect elevators, warehouses, depots or other buildings or structures on any part of the land, sought to be taken.   In fact, the argument of counsel proceeds upon the theory that it is immaterial whether it so expects or intends or not.   It seems to be thought that whenever an attempt is made to open a street or highway across the right of way of the defendant company it may prove the value of the ground taken, for warehouse, elevator or depot purposes, and have that value considered in fixing its just compensation.   It needs no argument to show that such a construction would practically destroy the rights of the public to lay out highways across its right of way.   In this case the streets proposed to be opened are but a block distant from each other.   The contention is, that at each crossing the value of the land taken, on either side of the track, may be proved for the purposes named.   On the same theory, no matter how many streets are attempted to be laid out across the right of way by a city or village, it would be required to pay the value of the land taken, for warehouse, elevator or depot purposes, without any reference to the intention of the company to so use it. Such a construction of the law of eminent domain, as applied to the condemnation of railroad right of way, is not only unreasonable, but is contrary to all the authorities.   Just compensation does not include "imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, *and which may or may not occur in the future.*"   Possible or imaginary uses are to be excluded.   *Nor can the owner show the probable future use of the property.*   (Pierce on Railroads, 217; *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 id. 457; Lewis on Eminent Domain, 48; *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 157 Ill. 48.)   *Illinois Cen-*

*tral Railroad Co.* v. *City of Chicago, supra,* was not intended to announce a different doctrine.

. When the property of a private individual is taken for public use he may undoubtedly prove its value for any and all purposes, whether he contemplates devoting it to such purposes or not, because the measure of his just compensation is the market value of his land, which can only be determined by taking into consideration all the uses to which it is adapted. But, as has been often decided by this court, a very different rule obtains in the condemnation of railroad right of way. There, market value cannot enter into the estimate of compensation, for the reason that such property cannot be sold for general purposes. (*Chicago and Northwestern Railway Co.* v. *Town of Cicero, supra.*) If an attempt should be made to lay out a street across a right of way at a point where the railroad company is about to place, or in good faith designs placing, such structures, other than tracks, as it has the right to construct, in connection with the operation of its road, the value of the land for such contemplated purpose could properly be considered in estimating compensation; but its value and suitableness for such purpose, together with the mere fact that the company may at some future time conclude to so use it, furnishes no basis for such estimate.

Some of the instructions given at the instance of the petitioner might well have been refused as irrelevant, but giving them worked no injury to the defendant. Under repeated decisions of this court the jury would have been justified in fixing the compensation for each crossing at a nominal sum. Certainly the defendant has no just cause of complaint.

Some objections are made to the sufficiency of the verdict and judgment, but we regard both as in substantial conformity with the law.

The judgment of the county court will be affirmed.

*Judgment affirmed.*